Case number 172528, Robert Kaminski v. The Libman Company. Oral argument not to exceed 15 minutes per side. Mr. Powell for the appellate. Well you can see the two of you don't draw a crowd. May it please the court, I fully understand that. It looks like people were here for the environment and not a grill brush, but I will proceed nonetheless. My name is George Powell on behalf of the appellate. May it please the court, I have reserved three minutes for my rebuttal on this matter. Your Honor, I have briefed this very simply and I think that the argument itself is very simple. The district judge applied the incorrect test of the analysis, or applied the incorrect test of the claims presented before the court. The district court judge, throughout his opinion, had applied the risk utility analysis to our claim of breach of implied warranty for fitness for a particular use. Now the case law suggests, especially post-parentis, that these are two distinct theories with two distinct analysis. That's referenced in Legalo and that was adopted by the Fleck Court. Now essentially the Fleck opinion, or the facts in Fleck, are similar lockstep with the facts in this case. In that case, a plaintiff was injured by an exploding tire. He brought theories of design defect, brought a theory of failure to warrant, brought a theory of a breach of implied warranty for fitness for a particular use. After analysis of all the facts, the judge in the Fleck case dismissed, on summary judgment, the design defect claim, dismissed the failure to warrant claim, but advised that there were factual considerations to be made that could go before a jury on the failure, or I'm sorry, for the breach of fitness for a particular use claim. Now the case law suggests that under a breach of implied warranty, the plaintiff need only show that the product was defective when it left the defendant's control, or the company's control, and that the defect caused the injury. That's in the Hollister case and adopted in several cases. The Fleck Court acknowledges this and even goes as far as to say a risk utility analysis is inapplicable. It's inapplicable to a breach of implied warranty case. Now as far as the facts in this case, they're very simple and frankly undisputed. My client was using a grill brush in his home in northern Michigan. He heated the grill. He was applying the grill brush to the grill grate when he was preparing chicken for his family. He consumed the chicken within a few days, noting bloating in his stomach. His stomach began to increasingly get worse, at which point he sought medical treatment. He was taken to the hospital where a CT was performed, where the physician or the radiologist found a wire bristle that had protruded his intestine to the extent that he had to undergo an emergency labrotomy. And post-surgical complications ended up with his stomach basically stretched to the side. That evidence alone is, whether or not it be direct, is circumstantial enough to proceed to a jury. So the proof says that... Why? Excuse me? Why would that evidence alone be enough to go to a jury? Because the courts have suggested, especially... That sounds like the fact of injury is enough. Well, no, Your Honor, because the CT scan specifically says in the radiology report that it is a grill brush, possibly from a grill brush bristle. I understand that. I don't dispute that. But that doesn't get you to the jury, does it? Well, I believe that it does. You've got to prove something's wrong with the brush. There's a defect, correct. And all we need to show is a defect without going through the risk-utility analysis, because the risk-utility... Well, as I understand it, there were no showing of any kind of comparison between what you could make a better bristle brush or than what was made. That's applicable to the risk-utility analysis and a design-defect claim. The breach of implied warranty, and I'll concede that, Your Honor. A breach of implied warranty only mandates the plaintiff show a defect and links it to the injury. The defect caused the injury. The court held this was a simple tool. Correct. That's only applicable as a defense to a failure to warn, not with respect to the breach of implied warranty. And I'll get to the failure to warn in a minute. I had an old teacher that told me in Michigan the breach of implied warranty is a breach not to be negligent. So if you've taken out the simple tool as an argument, where's your case? Where's the negligence? The simple tool is an affirmative defense to a failure to warn analysis. It's inapplicable to the breach of implied warranty. The breach of implied warranty only mandates that you show a defect and a defect linked to the injury. The defect being in an expert... They're arguing some kind of strict liability. Michigan has done away with strict liability claims. But they still have adopted the breach of implied warranty. In fact, in the case of Boverett, not only did they suggest that the proofs are separate and distinct, but that a jury could be instructed on these two separate and distinct theories. And the jury was cognizant enough to separate the two theories and judge. In fact, in the Boverett case, the jury found that there was no negligent design but found that there was a breach of implied warranty. And that issue on appeal was how could a jury, if these cases are a unitary theory, as the judge in our case suggested on page 8 of his opinion. With a little loss, how do you prove your implied warranty? I have to show a defect. And I have to show a defect caused the injury. And the defect is because a bristle came out of a brush? The defect shown from my expert in his analysis showed that he was able to, with a hemostat, pull that particular bristle out with 17.3 pounds of force. Now the quality assurance manager for the company said that when they do their testing, that he was unsure of exactly what the requirements for pounds of force that were required before the brush went on the market, but he thought that they were somewhere between 20 and 40, 20 being on the low end. So 17.3 pounds of force, according to my expert, was not much force at all. And he was able to do so with a hemostat. Now that circumstantial evidence suggests that that bristle, because there was no evidence of any cracking or any severed bristles by my expert, I will concede that, that the evidence suggests circumstantially that that particular bristle could have come dislodged in a pull process, come out completely without any evidence of cracking or fracturing. How does a jury know that that's not a proper amount of force to withstand? My expert testified that it's a very minimal amount. But he said he thought. Right. That's not the same as an opinion, I don't think. Well, the quality assurance manager for the company has suggested and testified that their requirements are somewhere between 20 and 40 pounds of force. That doesn't make negligence, even if you don't follow your own system, does it? Well, it establishes a parameter for the jury to show exactly what the policies are in-house and what is expected of the product. And, frankly, if I have an expert that says the pounds of force required to pull out this particular bristle are less than the minimal requirements as advised by the QA manager,  those fall below the standards of the company. Therefore, they were negligent in releasing it out into the market. Now, the defect is there from the pullout, and then the circumstantial evidence is there because the wire bristle that was consumed was in the intestine. So that's enough pursuant to all of the product liability cases. How did the bristle get dislodged? The theory being that the bristle became dislodged during the scrubbing process and found its way into the meat. It became dislodged from a pulling force. These grills, the grill that he used, the grill that these bristles are not tested on, here is another issue I'd like to bring up, is that these particular, my client's particular grill grate is a cross grate, as several are, giving it more of a propensity to snag and become dislodged. The quality assurance people for the living company testified that when they do their testing, they use a cold grill grate without cross hairs. It's a straight back and forth on a parallel grate. So they don't test for these particular things. So the theory being that the bristle became dislodged on a cross section when it entered the chicken and became consumed by my client. So it's our theory that alone, because of the case law suggesting that there doesn't need to be direct evidence in a product liability case, the circumstantial evidence is there for a jury. A jury could certainly put the link together between the dislodged bristle, the consumption, and the puncture of the intestine. So you're arguing that on the failure to warn, that it was not a simple tool because the danger was not open and obvious? That's the second argument that I haven't addressed yet. Yeah, no, you haven't talked about that yet, but I'm just asking. Right, and I appreciate that, Your Honor. There's no element of the failure to warn analysis that contemplates open and obvious. The only parallel of the three prongs is the second prong that says that the plaintiff or the injured party would have no reason to believe of the danger. Now, the three prong test under Peck is that the company, the manufacturer, had actual or constructive knowledge of the danger. That became ultimately apparent in the testimony of several of the individuals, including their claims manager, who testified that under two similar circumstances within the five-year period prior that two people had been injured by consuming their grill brush bristles, one had completely injured. Now, what I stated was the correct statement of your position on Peck. Correct. I would argue that that is incorrect, that open and obvious is not applicable in this particular circumstance. Unlike a premise liability claim or other sorts of liability claims, a product liability claim, open and obvious is not applicable. It's a knowledge component or a reason to know component. And the third component, well, the first component, again, is that this particular company Wait a minute. You're saying the brush was not a simple tool, correct? I'm arguing that because that's an affirmative defense to the failure to warn analysis. My argument is that it's not a simple tool. And the reason it's not a simple tool, your argument is what? Well, look at the case law. The simple tools that I can find are a swimming pool. A defendant in their brief had cited a case of a grandfather clock that fell over on somebody. Yeah, but this implement, why is this implement not a simple tool? Well, to the extent that it's not simple to, just like the tire in the flat case isn't a simple tool, there's the component of its bristles on a brush. I understand that it's not a complex machine. But at the same time, the court in FLEC along with, in lockstep with what we're analyzing here, is that, you know, is it I thought my question was simple. What are the characteristics of this grill brush that render it to be not a simple tool? It's not a complex machine, your honor. There's no definition of exactly what a simple tool is. The case law will only give us a handful of pluses and minuses as to what it is, your honor. All right, I give up. How does it differ from other brushes that people commonly use? I mean, nobody warns me about a hairbrush or a toothbrush or any of those things. Right. And that's precisely what the risk utility analysis, which I am conceding that the district court found the risk utility analysis applicable to this case to our design defect claim, we did not meet that burden. But it is separate and apart from a breach of implied warranty. So when the judge, there's six factors in the risk utility test that address that question, your honor, of an alternative design. That under a design defect claim is what we have to allege and approve, but not under a breach of implied warranty claim. The Legallo case says that those are separate and apart and distinct proofs and elements to be considered. The judge did not analyze the breach of implied warranty. What he did was proceed under a risk utility analysis and dispose of all claims rather than giving us the leverage to proceed to a jury on the breach of implied warranty claim where we only need to show a defect and from that defect a causal link to the injury. I see that amount of time. So your argument is that under the risk utility test, you did not have to show that there was a safer alternative design. No, that's not my argument. My argument is that the risk utility test is applicable to a design defect claim where you do have to show that and we have conceded that proportion of the judge's decision. That that test was not met with respect to a design defect claim. However, that's not the analysis to be applied to a breach of implied warranty claim. The case law has separate proofs and separate analysis. It may be a misunderstanding, but it sounds as though you're saying that you did have to show that there was a safer alternative design, but you simply didn't do that. Under the risk utility analysis, we do. Under the six-prong test for a design defect claim, that has to be shown. And you say you did show that. I'm saying I did not show that. I am conceding that part. My God, you're the hottest person to follow that we've had over here today. Okay. Just, I see the amount of time. I'm only going to close and say that this particular, the two claims are separate and distinct and deserve different analysis that was not addressed by the judge in the circuit court. I'm sorry. All right. May it please the court, Jeff Garrish on behalf of the Libman Company. I'm sure the court will be very sad to hear that I don't plan to use all my time. I said in my statement regarding oral argument that if there was anything brought up in reply that I didn't address, I would deal with it today. There wasn't a reply brief filed. The brief that we filed has addressed all of the arguments that have already been made. His entire argument is that the risk utility analysis doesn't apply for a claim under implied warranty. But he's wrong. He's wrong. In order to show a product defect, which you have to show even if you're proceeding under implied warranty, there has to be a risk utility analysis. The Michigan Supreme Court has repeatedly said that. This court has repeatedly said that, including in the Peek opinion authored by Judge Sir Heinrich. And perhaps most importantly, the statute, Michigan statute says it, and he's made no attempt to deal with it. And that is MCL 600.29462 specifically says that to show a defect, whether you're under implied warranty or negligence, you have to show, quote, generally accepted production practices in the industry, and you have to show, and I'm quoting again, practical and technically feasible alternative that would have prevented the harm without significantly impairing the usefulness or desirability of the product. I'm going to give the court one more case site from this court that I probably should have put in my brief. That's the Krosky v. BMW case, which is 532F3-511. And that's another case where you said to show a defect, you have to proceed with a risk utility analysis. So his entire argument is simply wrong. The duty to warn, I agree that you don't need a risk utility analysis for that. But, Judge Clay, this is a simple tool. Judge Gibbons, your question is exactly right. There is no duty under Michigan law to put a warning on every brush that says bristles can come out. Michigan law says there's no duty to tell people what they should already know. That's the simple tool doctrine. And this is a quintessential example of a simple tool. There is a test for that. It's a simple tool if it's not highly mechanized or if it doesn't put the user in obviously dangerous positions. This is a quintessential example of a simple tool for which there is no duty. You know, in that regard, a simple tool is not highly mechanized, but it's also not dangerous. But if you have a wire brush that's going to be mixed in with food and the bristles come out, then you can't say it's not dangerous. So is that a basis to decide that this is not a simple tool? I don't think so, Judge Clay, because any product could be dangerous, probably virtually anything. The issue is if something presents a risk that the user would not have any reason to suspect. That's the essence of the doctrine. And the question is, does this manufacturer have to put a warning on every single brush that says the bristles can come out, and because you're using it on a grill with food, it can get into the food? The answer is no, because under Michigan doctrine, this is a simple tool, and that is something that a user of a brush ought to know. A reasonably prudent user of a brush would know that bristles can come out. And there isn't any precedent for the notion that something like a brush isn't a simple tool. A consumer may think that they have a reasonable expectation that wire bristles that can wind up in their stomach won't come out as easily as bristles on a hairbrush. That's fair. That's fair, but the point is they can come out. A wire bristle can come out. It can break. I mean, if you've got a grill brush, if you have a charcoal grill, you know the bristles break and come out all the time. This is not unusual. So the notion that there has to be a warning on the brush that says bristles can break or come out, otherwise users would have no idea of this possibility, with all due respect, is nonsense. And that's why the doctrine exists. I don't know about other states, but I know Michigan has very stringent laws in this regard and doesn't require product manufacturers to issue warnings for something that a user has a reason to. Or the consumer may assume that because of the danger of getting wire in their stomach, it's such that the manufacturing process would be more, shall we say, permanent, a little more reliable than with a hairbrush. Well, and I think that goes more toward the design defect, which requires risk utility analysis. Right, right. But whether you look at the test, the highly mechanized and obviously dangerous position, or whether you look at the types of things that have been found to be simple tools, the result is the same. Michigan has found knives, hammers, propeller-driven airplanes, buzz saws, trampolines, and swimming pools have all been found to be simple tools. And in each one of those instances, the danger presented is no less obvious, I would submit to the court, than the danger of a wire bristle coming out of a brush. Now, I know that it's been a long day for the court, but I do want to just briefly address the other point we've made, because it did come up during my brother counsel's argument, and that is the judge didn't rely on this, but this entire claim is entirely speculative. We don't know whether the brush that was taken from his intestine was even out of our brush. In fact, there's reason to believe it wasn't. Their expert examined our brush and concluded that no bristles had come out of it. He couldn't find anywhere where a bristle had come out of it, despite inspecting it under a high-degree magnification microscope. Well, that would certainly go to his ability to prove causation. Exactly, exactly. And he didn't have an expert on causation. His only theory was basically that he used the brush, and sometime later he had this turn up in his stomach. Actually, it was a couple months later. But the point is, we don't even know. We have reason to believe it wasn't this brush, and we don't know that it might not have been a grilled brush from somewhere else, maybe from a restaurant or somewhere else. The causation theory would require a jury to speculate, basically to take a wild guess, that it was our brush. That wasn't ruled upon, and it's not on appeal, right? It wasn't ruled upon. We briefed it because we think it's an alternative basis for affirmance that this Court can use as a basis for affirmance, if you like, but it wasn't ruled on. I'm remembering that the bristle was not, the piece of metal was not preserved. Exactly, Judge Gibbons, and I'm glad you brought that up, because that's another problem with their causation theory. They didn't even save the bristle. If they had saved it, the doctor saved it, but then he didn't get it from the surgeon or the doctor. If they had saved it, then it could have been tested to determine whether it came out of the Libman brush, but it wasn't. So he's asking, essentially asking a jury to just guess that the bristle came from our brush, which is another basis. But Judge Clay, you're right, Judge Yonker did not rule. He assumed causation and then ruled quite correctly, in our view, that they didn't even bother to proceed under a risk-utility analysis, and it's a simple tool. I think the Court understands my argument, and I will thank the Court for its time. Thank you very much. Mr. Powell, did you reserve any time? I did. All right.  Okay. Just to point out, my client's salt-of-the-earth people, even when he's rushed in for surgery to remove a piece of metal, I don't think the first thing on his mind is, I better get somebody to preserve this. The hospital had a three-day preservation period for anything pulled out. He was never offered to keep it. It was disposed of accordingly. It was nearly impossible outside of his direct request in the surgical room. Well, but that, I mean, the test is not whether he acted reasonably and not immediately requesting it. I mean, the question is whether he now can prove causation. Right. And I would argue, Your Honor, that that is a question for the jury, that sufficient circumstantial evidence has been provided between the incident, what has shown up on the CT scan, and the resulting injury from that. It's pretty hard to even, how long after he used the grill brush did he have the surgery? About a month. So that aside, I just wanted to stress the point that as far as the failure to warn is concerned and the dangerous aspect of the brush, that there were two incidents of consumed grill brush bristles, one by a young adult, one was surgically removed, the other was stuck in a gum. I think that it's our position that that, within a short five-year period, that's enough for this particular company to propel them to issue a warning claim on a particular brush and for that to be recognized by the law. Thank you, Your Honor. Thank you very much. The case is submitted and there being no further cases for argument, court may be adjourned.